IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SUREN ORDOIAN,

        Petitioner,

       v.                                     Case No. 2:26-cv-00207-KWR-SCY

TODD M. LYONS, *in his official capacity as*
*Acting Director, Immigration and Customs Enforcement,*
*U.S. Department of Homeland Security*,
JOEL GARCIA, *in his official capacity as*
*Field Office Director of the ICE El Paso Field Office of*
*Enforcement and Removal Operations, U.S. Immigrations*
*and Customs Enforcement; U.S. Department of Homeland Security*,
KRISTI NOEM, *in her official capacity as Secretary,*
*U.S. Department of Homeland Security*,
PAMELA BONDI, *in her official capacity as*
*Attorney General of the United States*,
DORA CASTRO, *in her official capacity as*
*Warden of the Otero County Processing Center*,

        Respondents.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Petitioner's Amended Petition for Writ of Habeas Corpus (**Doc. 6**). Having reviewed the parties' pleadings and the relevant law, the Court finds that the Petition is not well-taken and, therefore, is **DENIED**.

## BACKGROUND

Petitioner Suren Ordoian is a citizen of Armenia who entered the United States in December 2022 with his spouse and two children. Doc. 6 ¶¶ 1, 24. Upon his arrival, Petitioner was charged with inadmissibility under the Immigration and Nationality Act ("INA"), ordered to appear before an immigration judge ("IJ"), and paroled into the United States to seek asylum. *Id.* ¶¶ 24–25. At the time, Immigrations and Custom Enforcement ("ICE") determined that he was

neither a flight risk nor a danger to the community, and Petitioner and his family were released. *Id.* ¶ 2. In March 2023, Petitioner and his family applied for asylum. *Id.* ¶ 26. Up until his detention, Petitioner had "fully complied" with his parole and reporting requirements and obtained proper employment authorization. *Id.* ¶ 2.

On June 20, 2025, ICE detained Petitioner when he appeared for a routine check in. *Id.* ¶¶ 1, 3. Petitioner states that ICE did not inform him "whether the arrest was supported by a warrant or the legal basis for Petitioner's detention," and there had been no changes to his case or his personal circumstances to support detention. *Id.* ¶ 3.

At a hearing in August 2025, an IJ denied Petitioner asylum, denied him withholding of removal under the INA and Convention Against Torture ("CAT"), and found him removable and inadmissible under the INA. *Id.* ¶ 27; Doc. 6-3. Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). While his appeal was pending, he filed his initial petition with this Court seeking habeas relief. Doc. 1. The BIA subsequently dismissed his appeal on January 30, 2026. Doc. 6 ¶ 28. On February 10, 2026, Petitioner requested that the Tenth Circuit review the BIA's decision. *Id.* ¶ 29. And on the same day, Petitioner filed his Amended Petition with this Court. *Id.* Petitioner has not requested a stay of removal pending a decision by the Tenth Circuit. *Id.*; Doc. 8 at 2.

As of the date of the Amended Petition, Petitioner is detained at the Otero County Processing Center in New Mexico. Doc. 6 ¶ 1. He challenges the constitutionality of his custody and the process that resulted in his re-detention and continued detention, contending that he was detained without notice, an opportunity to be heard, and a pre-deprivation hearing. *Id.* ¶¶ 1, 9.

Petitioner asks the Court to declare that Respondents violated his Fifth Amendment right to procedural due process and issue a writ of habeas corpus requiring Respondents to (1) release Petitioner or (2) conduct an individualized bond hearing. *Id.* at 12.

**LEGAL STANDARD**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

**DISCUSSION**

Petitioner asserts that his re-detention and continued detention without an individualized determination of whether continuation of parole or release is warranted violates his Fifth Amendment right to procedural due process. *See* Doc. 6 ¶¶ 47, 49. Despite the issuance of a final order of removal, Petitioner argues that the Court has jurisdiction over the Petition and should grant his habeas relief. *Id.* ¶ 11. Meanwhile, Respondents argue that his Amended Petition is moot since Petitioner must be detained under 8 U.S.C. § 1231(a) now that he is subject to a final order of removal. Doc. 8 at 3, 7.

Although Petitioner does not challenge the statutory scheme governing his detention as a noncitizen, the INA is relevant to the Court's analysis and warrants a brief description.

The INA authorizes detention for certain noncitizens pending a decision on removal. *See* §§ 1225–26; *see also Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) ("U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)."). But once an order of removal has become final, the authority governing a noncitizen's detention shifts to

another statutory provision, 8 U.S.C. § 1231(a)(2).  *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 574 (2022) ("After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day removal period, during which the Government 'shall' detain the noncitizen.") (citing § 1231(a)(1), (2)). The "removal period" begins once a noncitizen's removal order "becomes administratively final," § 1231(a)(1)(B), meaning the order has been affirmed by the BIA or the time for seeking review has expired, 8 U.S.C. § 1101(a)(47)(B). *Riley v. Bondi*, 606 U.S. 259, 267 (2025).  During the removal period, detention is mandatory. § 1231(a)(2).

At issue here is whether the final order of removal moots Petitioner's constitutional violation claim.  For the reasons below, the Court finds that because an order of final removal has been entered in Petitioner's case, the Court no longer has jurisdiction to consider the issue of Petitioner's re-detention and continued detention without a bond hearing to determine whether he is a flight risk or danger to the community. Although Petitioner's remaining challenge to his continued detention, now governed by § 1231, remains live, the Court does not find that his detention under § 1231 violates his right to procedural due process.

Article III of the Constitution limits the judicial power of federal courts to the resolution of "cases" and "controversies." U.S. Const. art. III, § 2.  A case or controversy no longer exists "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).  Accordingly, "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *Johnson v. Riveland*, 855 F.2d 1477, 1480 (10th Cir. 1988) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (per curiam)). A federal court may raise mootness *sua sponte* at any time. *Id.*

Here, an IJ denied Petitioner's application for asylum, withholding of removal, and protection under CAT and ordered Petitioner removed. The BIA affirmed Petitioner's order on January 30, 2026. Petitioner has not sought a stay of removal while his petition is pending before the Tenth Circuit. Now that Petitioner's case is in the removal period, his detention is mandated by § 1231(a)(2). Although Petitioner is still in custody, his custody status does not automatically mean that the case is still live. *See Al Najjar v. Ashcroft*, 273 F.3d 1330, 1339 (11th Cir. 2001) (challenge to denial of bond in pre-removal habeas proceedings was moot once a final order of removal was issued in a separate proceedings); *Wang v. Ashcroft*, 320 F.3d 130, 147 (2d Cir. 2003) (petitioner's due process claim under § 1226 was moot the moment the court disposed of his CAT claim). And now that a final order of removal has been affirmed, Petitioner's case as to his re-detention and mandatory detention under §§ 1225 and 1226 is moot. Despite Petitioner's assertion, the purpose of parole has been accomplished because his asylum application has been denied and affirmed. And a bond hearing would have no practical effect on Petitioner now that he is subject to mandatory detention pursuant to § 1231. *See Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974).

Accordingly, because Petitioner subject to mandatory detention under § 1231, the Court can no longer issue relief that will touch the legal relations of the parties as it relates to his re-detention while he was on parole and his mandatory detention before the issuance of a final order of removal on January 30. *See Rice*, 404 U.S. at 246. And the Court is prohibited from issuing an advisory opinion on whether Petitioner was entitled to receive such a hearing.

But since Petitioner is currently held in custody under §1231, his Fifth Amendment challenge to continued detention remains live as he is "susceptible to continuing injury" and a decision by the Court would "affect the behavior" of Respondents. *See Jordan v. Sosa*, 654 F.3d 1012, 1024–25 (10th Cir. 2011); *see also Hassoun v. Searls*, 976 F.3d 121, 128–29 (2d Cir. 2020)

5

(case was not moot while petitioner sought release and the respondent refused to release him); *Wang*, 320 F.3d at 147 (analyzing petitioner's challenge to continued detention under § 1231 as his § 1226 argument was moot).

Here, Petitioner's detention under § 1231 has not violated Petitioner's Fifth Amendment right to due process. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). But because noncitizens "do not have a constitutional right to enter or remain in the United States, the only protections afforded are the minimal procedural due process rights for an 'opportunity to be heard at a meaningful time and in a meaningful manner.'" *Arambula-Medina v. Holder*, 572 F.3d 824, 828 (10th Cir. 2009) (quoting *de la Llana–Castellon v. I.N.S.*, 16 F.3d 1093, 1096 (10th Cir. 1994)). Looking to the three-part balancing test outlined in *Mathews*, 424 U.S. at 335, the Court finds that the factors do not weigh in favor of Petitioner.

First, the Court considers "the private interest that will be affected by the official action." *Id.* The private interest at stake here is freedom from detention. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). Petitioner is subject to a mandatory 90-day detention, which began once the BIA denied his appeal on January 30, 2026. Further, his detention is well within the presumptively reasonable six-month timeframe under *Zadvydas*, 533 U.S. at 701. Accordingly, Petitioner's private interest in freedom from custody does not heavily weigh in his favor; Petitioner's current detention under §1231(a)(2) falls within a carefully limited exception to one's private interest in being free from imprisonment. *See Demore v. Kim*, 538 U.S. 510, 531 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process.").

Second, the Court considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Here, the risk of erroneous deprivation of his liberty interest is low since Petitioner is detained following an individualized proceeding before an IJ where he was able to present evidence and argue his case on its merits—and the IJ's decision was then reviewed and affirmed by the BIA. And third, the Court considers "the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." *Id.* Respondents have a substantial interest in ensuring that noncitizens, subject to a final order of removal, will be present when it is time for them to be removed. *See Zadvydas*, 533 U.S. at 690.

Accordingly, to the extent that Petitioner's due process claim is reviewable, the Court finds that his argument fails because the *Mathews* factors do not weigh in his favor.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Petitioner's Amended Petition (**Doc. 6**) is hereby **DENIED** for the reasons described in this Memorandum Opinion and Order. The Petition is dismissed without prejudice.

          /S/
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE